## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KEITH PARRISH,

      Plaintiff,

vs.                                    No. CIV 15-0703 JB/GJF

THE ROOSEVELT COUNTY BOARD OF
COUNTY COMMISSIONERS, a political
sub-division existing under the law of the
State of New Mexico,

      Defendant.

## MEMORANDUM OPINION[1]

    **THIS MATTER** comes before the Court on (i) Defendant The Roosevelt County Board of County Commissioners Motion for Summary Judgment, filed April 27, 2016 (Doc. 35)("MSJ"); and (ii) Plaintiff Keith Parrish's Motion to Strike Summary Judgment Affidavit of Amber Hamilton, filed May 11, 2016 (Doc. 36)("Motion to Strike"). The Court held a hearing on July 6, 2016. The primary issues are: (i) whether the Court should strike the Affidavit of Amber Hamilton (executed April 27, 2016), filed April 27, 2016 (Doc. 35-

---

[1] On March 13, 2017, the Court issued two orders disposing of motions arising out of the same controversy. The Court issued the first Order, filed March 13, 2017 (Doc. 53)("First Order") in which it (i) granted in part and denied in part the requests in Defendant The Roosevelt County Board of County Commissioners Motion and Brief for Summary Judgment, filed April 27, 2016 (Doc. 35); (ii) dismissed with prejudice Plaintiff Keith Parrish's federal claim, asserted pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219; and (iii) dismissed without prejudice Plaintiff Keith Parrish's remaining state law breach-of-contract claim. The Court issued the second Order, filed March 13, 2017 (Doc. 54)("Second Order"), in which it denied Plaintiff Keith Parrish's Motion to Strike Summary Judgment Affidavit of Amber Hamilton, filed May 11, 2016 (Doc. 36). The Court stated -- in both orders -- that it would, "at a later date, issue a Memorandum Opinion more fully detailing its rationale for this decision." First Order at 1 n.1; Second Order at 1 n.1. This Memorandum Opinion is the promised Memorandum Opinion that details the rationale of both orders.

6)("Hamilton Aff."); and (ii) whether Defendant The Roosevelt County Board of County Commissioners ("Roosevelt County") is entitled to summary judgment on the Plaintiff's Civil Complaint and Demand for Jury Trial, filed August 11, 2015 (Doc. 1)("Complaint"), specifically, its federal claim under the Fair labor Standards Act, 29 U.S.C. §§ 201-19 ("FLSA"), and its state-law claim for breach of contract. First, the Court will not strike the Hamilton Aff., because it is based on personal knowledge. Second, the Court concludes, that there is no genuine dispute as to any material fact such that Roosevelt County is entitled to summary judgment as a matter of law on Parrish's FLSA claim. Parrish qualifies for the FLSA's administrative and executive exceptions. His salary exceeded $455.00 per month, his duties entailed supervising others, and he manages aspects of Roosevelt County Detention Center. The Court declines, however, to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(c), over Parrish's state-law breach-of-contract claim. Accordingly, the Court grants the MSJ as to Parrish's FLSA claim and dismisses the breach-of-contract claim without prejudice.

## FACTUAL BACKGROUND

The Court provides two factual background sections below. First, the Court provides a factual summary based on the Complaint's allegations to give context for the MSJ. Second, the Court provides the undisputed facts, which it derives from Roosevelt County's assertions of material fact in the MSJ, Plaintiff Keith Parrish's Response to "Defendant the Roosevelt County Board of County Commissioners Motion for Summary Judgment," filed May 11, 2016 (Doc. 37)("MSJ Response"), and Defendant the Roosevelt County Board of County Commissioners' Reply in Support of Motion for Summary Judgment,[2] filed May 31, 2016

---

[2]Concerning the procedural rules that govern the movant's submission of a reply to summary judgment motion, D.N.M.L.R.-Civ. 56.1(b) provides:

(Doc. 40)("MSJ Reply"), for purposes of deciding the MSJ under rule 56(a) of the Federal Rules of Civil Procedure.

### 1.      The Complaint's Factual Allegations.

Parrish is a former employee of Roosevelt County, which is a political subdivision operating under the laws of the State of New Mexico.  See Complaint ¶¶ 2, 7 at 1, 3.  Roosevelt County operates Roosevelt Detention in Portales, New Mexico.  See Complaint ¶ 6, at 2. Sometime in 2015, Roosevelt County informed Parrish that he would have to work "at least fifty hours a week."  Complaint ¶ 8, at 3.  Parrish proceeded to "generally work[] in excess of forty hours a week," which included "holidays, vacation, snow days," and on-call duty after his regular hours, to comply with Roosevelt County's command.    Complaint ¶¶ 8-9, 14, at 3-4. Parrish also contends that "he never received a regular lunch break [because he] was expected to be working."  Complaint ¶ 15, at 4.

### 2.      The Undisputed Facts.

Parrish was paid more than $455.00 per week on a salaried basis while employed as a lieutenant at Roosevelt Detention.  See MSJ ¶ 1, at 3 (setting forth this fact, citing Roosevelt

---

The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

D.N.M.L.R.-Civ. 56.1(b).
        In submitting its MSJ Reply, Roosevelt County does not properly classify each fact in a lettered order, nor does it properly reference the respective letter of each of the MSJ Response's facts that it disputes, as D.N.M.L.R.-Civ. 56.1(b) requires.  The Court will not, however, disregard Roosevelt County's otherwise sound disputations in the MSJ Reply on procedural grounds.    See Tapia v. City of Albuquerque, 10 F. Supp. 3d 1207, 1252 (D.N.M. 2014)(Browning, J.)(citations omitted)("[T]he Court . . . generally does not grant dispositive motions on procedural defaults alone.").

County Detention Center Letter to Parish at 1, dated April 9, 2013, filed April 27, 2016 (Doc. 35-2)("Offer Letter")(offering Parrish a "modified salary of $35,238.00/year")).[3]   As a lieutenant,

_____

[3]Parrish purports to dispute this fact, asserting that "[he] was stripped of all duties as a Lieutenant in March, 201[5] and resumed the duties of a 'floor officer.'"  MSJ Response at 3 (alterations added).  He asserts, however, a general disputation of the first three facts Roosevelt County put in its Statement of Material Facts.  See MSJ Response at 3 ("There are material issues of fact in dispute regarding paragraph 1, 2, and 3, to wit . . . .")(alterations added). Parrish, accordingly, does not "specifically controvert[]" this factual allegation -- that Parrish's weekly salary during his tenure as lieutenant was more than $455 per week -- as the local rules require.  D.N.M.L.R.-Civ. 56.1(b) ("The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. . . .  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.")(alteration added).  Roosevelt County, moreover, substantiates that "Parrish was paid more than $455 per week on a salary basis," MSJ ¶ 1, at 3, with evidence that, on April 9, 2013, Roosevelt County Detention Administrator David Casanova offered Parrish a lieutenant position with a modified yearly salary of $35,238.00, and Parrish accepted.  See Offer Letter at 1.  Under the Offer Letter's terms, Parrish is entitled to $677.65 per week.

        Assuming, however, that Parrish's MSJ Response specifically controverts Roosevelt County's MSJ allegation, Parrish's objection that his lieutenant duties were eventually stripped does not dispute Roosevelt County's allegation that "Parrish was paid more than $455 per week on a salary basis while employed in the position of Lieutenant. . . ."  MSJ ¶ 1, at 3.  Parrish's duties could be stripped, but his salary could remain the same.  Parrish, moreover, does not contend that his salary dropped below $455.00 per week or that Roosevelt County stopped paying him a lieutenant's salary, nor does he point to any evidence that would dispute this fact. See Fed. R. Civ. P. 56(c)(1)(B).  Parrish's attempt to controvert this fact, therefore, does not create a genuine factual issue.  See Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(Anderson, J.)("[O]nce the movant shows absence of genuine issue of material fact, the burden shifts to the non-movant to produce evidence showing a genuine issue.").  The Court accordingly does not give weight to Parrish's contention, and the Court therefore deems the fact undisputed.  See Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion.").

        Parrish attempts, however, to substantiate his assertion that Roosevelt County stripped him of "any and all duties related to a Lieutenant's position" in March, 2016, even though he does not specifically controvert -- or even respond -- to Roosevelt's factual allegation.  MSJ Response at 4 (citing Deposition of Keith Parrish (taken March 2, 2016), filed April 27, 2016, (Doc. 35-3)("Parrish Depo.")).  Parrish draws on his own statements, which establish that in "March or April" of 2015, outside consultants came to Roosevelt Detention, and they "basically shut down all of [Parrish's] . . . lieutenant responsibilities . . . [and] took over pretty much everything that was done there at the facility."  Parrish Depo. at 129:12-14; 130:20-21.  Parrish explained during his deposition that, in response to the consultants "telling [him] everything to do basically," he felt as if "[he] might as well have been a floor officer, the way they were treating [him]."  Parrish Depo. at 134:16-19.

"Parrish was in charge of developing, directing and improving the inmate programs at RCDC."

MSJ ¶ 2, at 3 (setting forth this fact, citing Parrish Dep. at 82:21-83:20; id. at 87:3-10; id. at

---

Although the Court generally considers facts proffered in response to a summary judgment motion to be additional facts, consistent with the local rules, see D.N.M.L.R.-Civ. 56.1(b) ("The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion."), the material cited casts doubt on Parrish's assertion of material fact. First, his assertion is somewhat conclusory, because he states that he lost all of his lieutenant responsibilities, but he does not describe what duties he lost. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(stating that an opponent to summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts"); L&M Enterp., Inc. v. BEI Sensors & Sys. Co., 231 F.3d at 1287 ("Unsupported conclusory allegations thus do not create a genuine issue of fact."); Wright & Miller 10A Fed. Prac. & Proc. Civ. § 2272.2 (4th Ed.). Second, Parrish's subsequent testimony demonstrates that he did not lose all of his lieutenant responsibilities from March 2015 forward. Murray v. Edwards Cty. Sherriff's Dep't., 248 F. App'x 993, 996 (10th Cir. 2007)(unpublished)(holding that contradictory record evidence "fails to create a material disputed fact"). For example, Parrish testified that the entire facility reported to him when Administrator Casanova was out, see Parrish Depo. at 98:22-99:16, and Parrish also testified that Casanova was absent from Roosevelt Detention from March 6, 2015 until June 5, 2015, see Parrish Depo. at 150:6-12. One of a lieutenant's duties is to "[s]erve as a ranking supervisor on duty when Detention Administrator is not physically present in the building." Roosevelt County - Job Description at 1, dated May 17, 2015, filed April 27, 2016 (Doc. 35-5)("RC Job Descrip."). Parrish retained, therefore, at least one of his lieutenant duties after March 2015. That testimony also undermines Parrish's assertion that "he was given the duties of a floor officer," MSJ Response ¶ 3(A), at 4, because he could not have had only a floor officer's duties if all floor officers, and, indeed, the entire facility, reported to him. Moreover, that Parrish was frequently on call for work, see Parrish Depo. at 146:16-20; id. at 148:4-6; id. at 149:11-12, also demonstrates that he did not stop performing all lieutenant responsibilities, because one of the articulated lieutenant duties is to "work . . . irregular hours and/or overtime, cover subordinate shifts, . . . and to maintain open availability," RC Job Descrip. at 1. Finally, although asserting in his MSJ Response that he lost all lieutenant responsibilities, Parrish states in his deposition that some of his lieutenant responsibilities were simply "changed." Parrish Depo. at 130:13-131:2("Q: Did they take any of your duties away? A: They did. And they changed my -- I guess you would say changed a lot of the things I felt like were my responsibilities or things I was supposed to be taking care of at the time."). A responsibility change does not necessarily result in losing that responsibility; indeed, a change can result in more responsibility. A change could also affect some marginal aspect of the responsibility, which would not change its supervisory nature. Although the context suggests that the change resulted in Parrish losing some responsibility, it also suggests that not all responsibility was lost. Accordingly, Parrish's testimony undermines his allegation that Roosevelt Country stripped him of all of his lieutenant responsibilities. The Court, therefore, agrees with Roosevelt County's conclusion that "[Parrish's] allegation that he was stripped of any and all duties related to his Lieutenant position is not supported by fact." MSJ Reply at 6.

100:15-24).[4]   Additionally, Parrish was in charge of the Roosevelt Detention when Administrator

Casanova was away from the facility.  See MSJ ¶ 3, at 3 (asserting this fact, citing Parrish Dep.

at 98:22-99:2; id. at 99:12-16).[5]

---

[4]Parrish purports to dispute this fact, asserting that "[he] was stripped of all duties as a Lieutenant in March, 201[5] and resumed the duties of a 'floor officer.'"  MSJ Response ¶ 3(A), at 3 (alterations added).  As previously determined, record evidence undermines Parrish's deposition testimony that he lost all of his lieutenant responsibilities. See supra n.3. Unsupported conclusory assertions cannot create a genuine factual issue on a motion for summary judgment, so the Court deems the fact undisputed.  See supra n.3.

[5]Parrish purports to dispute this fact, asserting that "[he] was stripped of all duties as a Lieutenant in March, 201[5] and resumed the duties of a 'floor officer.'"  MSJ Response ¶ 3(A), at 3.  Roosevelt County, on the other hand, cites in support of its claim to Parrish's Depo. testimony, in which Parrish explains that he assumed Casanova's responsibilities during his absence.  See MSJ ¶ 3, at 4.

> Q:     When Mr. Casanova was gone for medical reasons or whatever, who was in charge of the facility?
>
> A:     Usually at the time -- usually, whoever was there and which was usually me or Mr. -- Lieutenant Gibbs, whoever was there.
>
> . . . .
>
> Q:     When Mr. Casanova was gone, were you the person --
>
> A:     Normally, if I was there, yes.
>
> Q:      -- that everybody else was reporting to?
>
> A:     Yes.

Parrish Depo. at 98:22-99:16.  As discussed supra n.3, Parrish's deposition also supports that Casanova was absent from Roosevelt Detention from March, 2015 until June, 2015.  See Parrish Depo. at 150:6-12.  Accordingly, Parrish's assertion is not only unsupported, but his deposition directly contradicts his assertion -- Parrish assumed Casanova's responsibility while Casanova was away and did so during the relevant time period.  Parrish's assertion therefore does not demonstrate a genuine issue.  See Fed. R. Civ. P. 56(c)(1)(B); Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891.  Accordingly, the Court considers the fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

Parrish's duties as a lieutenant entailed "supervis[ing] the subordinate officers (sergeants, corporals and floor officers) in the facility."  MSJ ¶ 4, at 3 (setting forth this fact, citing Parrish Depo. at 109:23-110:4; Hierarchy Chart, dated March 2, 2016, filed April 27, 2016 (Doc. 35-7)("Hierarchy Chart")).[6]  Parrish participated in the interview process for floor officers hired at Roosevelt Detention and made recommendations as to who should or should not be hired.  See MSJ ¶ 5, at 3 (asserting this fact, citing Parrish Depo. at 113:18-114:10).[7]  Additionally, Parrish -- in his capacity as lieutenant -- participated in discussions regarding firing employees and was

---

[6]Parrish purports to dispute this fact, asserting that "[he] had no authority to hire, fire, or discipline anyone. . . . [and his] duties were never exclusively administrative.'"  MSJ Response at 4.  Similar to Parrish's first general disputation to Roosevelt County's MSJ, discussed supra n.3, this assertion generally refutes the last three material facts that Roosevelt County asserts in the MSJ.  See MSJ Response at 3-4.  Parrish's assertion does not refute that he had supervisory responsibility over inferior officials at Roosevelt Detention.  One can lack the authority to discipline an employee, for example, but still be able to direct that employee in his day-to-day tasks.  Parrish therefore does not create a genuine issue.  The Court, accordingly, considers this fact undisputed.  See Fed. R. Civ. P. 56(e)(2).  To comport with the local rules, however, the Court will consider Parrish's assertions that (i) "[Parrish] had no authority to hire, fire, or discipline anyone" and (ii) that "[Parrish's] duties were never exclusively administrative," MSJ Response ¶ 2, at 3-4 (citing Parrish Depo. at 160:5-17), to be "additional fact[s] other than those which respond to the Memorandum," D.N.M.L.R.-Civ. 56.1(b), which the Court will discuss infra.

Parrish does not purport to dispute this fact with the assertion that Roosevelt Detention stripped him of his lieutenant responsibilities in March of 2015, see MSJ Response ¶ 3(A), at 3, but to the extent that such an assertion could dispute this fact, the Court concludes there is no genuine issue, because Parrish's assertion is conclusory, see supra n.3.

[7]Parrish purports to dispute this fact, asserting that "[he] had no authority to hire, fire, or discipline anyone. . . . [and his] duties were never exclusively administrative.'"  MSJ Response at 4.  For largely the same reasons explained supra n.6, the Court concludes that Parrish does not show a genuine issue here.  One can recommend someone for hire without having the authority to hire, fire, or discipline anyone.  The Court therefore considers the fact to be undisputed.  See Fed. R. Civ. P. 56(e)(2).

Parrish does not purport to dispute this fact with the assertion that he was stripped of his lieutenant responsibilities in March of 2015, see MSJ Response ¶ 3(A), at 3, but to the extent that such an assertion could dispute this fact, the Court concludes there is no genuine issue, because Parrish's assertion is conclusory, see supra n.3.

involved in the discipline process at Roosevelt Detention.  See MSJ ¶ 6, at 3 (setting forth this

fact, citing Parrish Depo. at 114:10-115:8).[8]

At some point while he was a lieutenant, Parrish was told that "he had to work at least

fifty hours a week including holidays and 'snow days' without additional compensation."  MSJ

Response ¶ 3(B), at 4 (setting forth this fact, citing Parrish Depo. 138:1-25).[9]  Parrish was also

"on-call twenty-four hours a day, seven days a week between at least March and June, 2016."

MSJ Response ¶ 3(C), at 4 (setting forth this fact, citing Parrish Depo. at 145:16-25; id. at 146:9-

25; id. at 148:1-19; id. at 150:7-25; id. at 151:11-14; id. at 153:17-25; id. at 160:5-161:11); MSJ

Reply at 6 (not disputing this fact).[10]  Between March and June, 2015, Roosevelt Detention was

---

[8]Parrish purports to dispute this fact, asserting that "[he] had no authority to hire, fire, or
discipline anyone. . . . [and his] duties were never exclusively administrative.'"  MSJ Response
at 4.  For largely the same reasons explained supra n.6, the Court concludes that Parrish does not
show a genuine issue here.  One can be involved with discussions regarding firing and
disciplining employees, and not have authority to hire, fire, or discipline anyone.  The Court
therefore considers the fact to be undisputed.  See Fed. R. Civ. P. 56(e)(2).
        Parrish does not purport to dispute this fact with the assertion that he was stripped of his
lieutenant responsibilities in March of 2015, see MSJ Response ¶ 3(A), at 3, but to the extent that
such an assertion could dispute this fact, the Court concludes there is no genuine issue, because
Parrish's assertion is conclusory, see supra n.3.

[9]Roosevelt County does not purport to dispute this fact.  Rather, Roosevelt County stated,
that "[Parrish's] additional material facts in dispute are irrelevant."  MSJ Reply at 2 n.1
(alteration added).  Roosevelt County's irrelevance assertion does not, however, dispute this fact.
See Walton v. N.M. State Land Office, 49 F. Supp. 3d 920, 924 n.2 (D.N.M.
2014)(Browning, J.)("Contending that a fact is not relevant is not disputing a fact, nor is it
specifically controverting a fact by directing the Court with particularity to the record.")(citing
D.N.M.L.R.-Civ. 56.1(b)), aff'd sub nom. Walton v. Powell, 821 F.3d at 1204 (10th Cir. 2016).
The Court will address factual relevance infra, in the Analysis section.  See O'Brien v. Mitchell,
883 F. Supp. 2d 1055, 1058 n.1 (D.N.M. 2012)(Browning, J.)(explaining that the proper course
is to determine relevance in the analysis section rather than in the factual background section).
The Court, accordingly, deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

[10]Roosevelt County concedes this fact, writing that Parrish's "claim that he was on call
twenty-four hours a day, seven days a week to handle whatever might come up at the detention
facility (Plaintiff's Response p. 3) belies [the] contention" that he was "stripped of any and all

understaffed and sometimes had only two people on duty making the environment dangerous for both officers and detainees.  See MSJ Response ¶ 3(D), at 5 (setting forth this fact, citing Hamilton Depo. at 18:4-10; id. at 26:15-25).[11]

Roosevelt Detention's policy for employee lunch breaks allows all full-time employees a one hour, unpaid lunch break, except for departments with established thirty-minute lunch breaks, and full time employees are eligible for two additional fifteen-minute breaks per day. See MSJ Response ¶ 3(G), at 5 (setting forth this fact, citing Hamilton Depo. at 23:1-24:21).[12] Parrish was, under Roosevelt County's policies, a full-time employee, see MSJ Response ¶ 3(F), at 5 (setting for this fact, citing Hamilton Depo. at 21:1-12; id. at 21:23-22:18)),[13] and rarely, if ever, received a meal break or the two fifteen minute breaks to which he was entitled, see MSJ Response ¶ 3(E), at 5 (setting forth this fact, citing Hamilton depo. at 27:6-28:2; id. at 29:11-12; id. at 30:2-24; id. at 31:1-13; id. at 35:17-23; Compensation and Benefit Program at 1, filed May 11, 2016 (Doc. 37-5)("Comp. Program"); Email from Becky White to Roosevelt County Employees, dated May 15, 2015, filed May 11, 2016 (Doc. 37-6)("Becky White Email)).[14]  All

---

duties."  MSJ Reply at 6.  The Court, therefore, deems the fact undisputed.  See Fed. R. Civ. P. 56(e)(2).

[11]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); supra n.9.

[12]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); supra n.9.

[13]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); supra n.9.
[14]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); supra n.9.

non-exempt employees are entitled to overtime, see MSJ Response ¶ 3(H), at 6 (setting forth this fact, citing Hamilton Depo. at 25:16-25),[15] and sergeants at Roosevelt Detention were entitled to overtime compensation, see MSJ Response ¶ 3(I), at 6 (setting forth this fact, citing Hamilton Depo. at 27:1; id. at 41:24-25).[16]

## PROCECURAL BACKGROUND

On August 11, 2015, Parrish commenced this action in the United States District Court for the District of New Mexico.  See Complaint at 1.  In the Complaint, Parrish asserts two claims against Roosevelt County: (i) Count I asserts a claim for violations of the FLSA's overtime requirements, see Complaint ¶¶ 16-21, at 4-5; and (ii) Count II asserts breach of contract for failing to pay Parrish for overtime or for regularly scheduled lunch breaks, see Complaint ¶¶ 22-26, at 5.

### 1.    Roosevelt County's MSJ.

In the MSJ, Roosevelt County advances two primary arguments: (i) that, at all relevant times, Parrish was exempt from the FLSA's overtime requirements, pursuant to 29 U.S.C. §213(a)(1); and (ii) Roosevelt County did not breach any contract.  See MSJ at 1. Initially, Roosevelt County restates a series of facts pertaining to Parrish's employment history at Roosevelt Detention.  See MSJ at 2-3.[17]  Roosevelt County then argues that Parrish, as

---

[15]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); supra n.9.

[16]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed. See Fed. R. Civ. P. 56(e)(2); supra n.9.

[17]The Court pauses to note that Roosevelt County sets forth these facts in a section entitled "Background Information."  MSJ at 2.  These facts precede the facts that Roosevelt County presents in the section entitled "Statement of Material Facts," in which it advances several assertions in compliance with D.N.M.L.R.-56.1(b), and which the Court, accordingly,

- 10 -

lieutenant, was exempt from the FLSA's overtime pay requirements under the FLSA's administrative and executive exemptions. See MSJ at 4-5. According to Roosevelt County, "[a] court's inquiry into the exempt status of an employee is fact bound and case specific," MSJ at 5 (quoting Archuleta v. Wal-Mart Stores, Inc., 543 F.3d 1226, 1233 (10th Cir. 2008))(alteration added), and, "to establish exempt status," Roosevelt County argues, "the employer must show that the employee meets both the FLSA's 'salary' test and the appropriate 'duties' test for the exemption which purportedly applies,'" MSJ at 5 (quoting Monroe Firefighters Ass'n v. City of Monroe, 600 F. Supp. 2d 790, 794 (W.D. La. 2009)(James, J.)).

Turning first to the administrative exception, Roosevelt County notes that the following factors determine whether an employee qualifies for it: (i) "an employee must be compensated on a salary basis at a rate of not less than $455 per week"; (ii) the employee's primary duty must be "'the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers'"; and (iii) the employee's primary duty must include "'the exercise of discretion and independent judgment with respect to matters of significance.'" MSJ at 5 (quoting Bernard v. Grp. Pub., Inc., 970 F. Supp. 2d at 1222 (citing 29 C.F.R. § 541.200(a)). Roosevelt County explains that an administrative employee's primary duty must be "to perform work directly related to assisting with the running or servicing or the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." MSJ at 5 (quotations omitted).

---

treats as undisputed factual allegations for purposes of disposing of the present motion for summary judgment. See D.N.M.L.R.-Civ. 56.1(b). The Court concludes that, from their location in the MSJ, the facts in the "Background Information" section are not asserted as undisputed, and the Court will not treat them as undisputed.

Roosevelt County then argues that Parrish was exempt under the FLSA's administrative standard.  See MSJ at 6.  First, Roosevelt County contends that Parrish meets the first factor, because Parrish was compensated at more than $455 per week.  See MSJ at 6 (citing MSJ ¶ 1, at 3).  Second, Roosevelt County contends that Parrish meets the second factor, because his primary responsibilities included "directing the inmate programs at RCDC," MSJ at 6 (citing MSJ ¶ 2, at 3 (undisputed fact)), "acting as the officer in charge of the facility while Administrator Dave Casanova was away from the facility,"  MSJ at 6, (citing MSJ ¶ 3, at 3 (undisputed fact)), and supervising subordinate officers, see MSJ at 6 (citing MSJ ¶ 4, at 3 (undisputed fact)).  Third, Roosevelt County asserts that Parrish meets the third factor, because Parrish directed all of the Roosevelt Detention inmate programs.  See MSJ at 6 (citing MSJ ¶ 2, at 3).

Roosevelt County also contends that Parrish also qualified for the FLSA's executive exemption.  See MSJ at 6.  To meet the executive exemption, Roosevelt County argues:

> First the employer must show that the employee was compensated on a salary basis of not less than $455 per week. 29 C.F.R. § 541.100(a)(1).  Second, to be an "executive employee" the employee's primary duty must have been management of the enterprise or of a customarily recognized department or subdivision. 29 C.F.R. § 541.100(a)(2).  Third, the employer must show that the "executive employee" regularly directed the work of two or more employees. 29 C.F.R. § 541.100(a)(3).  Finally, the "executive employee" has "authority to hire or fire other employees, or the employee's suggestions and recommendations on "hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight."  *Maestas v. Day & Zimmerman, LLC*, 972 F. Supp. 2d 1232, 1236-37 (D.N.M. 2013) quoting 29 C.F.R. § 541.100(a)(4).

MSJ at 6-7.  Roosevelt County again asserts that it paid Parrish a salary of more than $455.00 per week.  See MSJ at 7 (citing MSJ ¶ 1, at 3).  Roosevelt County also argues that Parrish's "role as director of programs for RCDC was directly related to the overall successful management of the detention center," so Parrish meets the second factor.  MSJ at 7 (citing MSJ ¶ 2, at 3).  Next,

Roosevelt County contends that Parrish directed the work of two or more employees when "Administrator Casanova was away from RCDC." Finally, Roosevelt County contends:

> Roosevelt County departments are in a unique situation compared to private sector employers when it comes to hiring and firing individuals. (Hamilton Aff.)[18]. Although Mr. Parrish did not have unilateral authority to hire or fire individuals at RCDC, while he was a Lieutenant he was part of the hiring panel that made hiring or firing recommendations (Statement of Material Facts No. 5)[19]. Mr. Parrish's recommendations as part of the hiring panel were given particular weight as to the ultimate hiring decision. (Exhibit F)[20]. Mr. Parrish also participated in discussions on whether individuals should be fired from RCDC (Statement of Material Facts No. 6).[21]

MSJ at 7-8.

---

[18]Roosevelt County references the Hamilton Aff. to support this claim. See MSJ at 8. Although Roosevelt County does not cite to any specific statements within Hamilton Aff., the Court observes that in the Hamilton Aff., Hamilton testifies to the following facts:

> 15.   The Detention Administrator and hiring panel make the hiring decisions for the floor officer and sergeant positions. The Detention Administrator makes the ultimate hiring decision for Lieutenant, and takes into account the recommendation of the hiring panel. The County Manager makes the ultimate hiring decision of the Detention Administrator, and takes into account the recommendations of the hiring panel.

> 16.   Although I make the final approval on whether to fire an employee of Roosevelt County, each firing approval I make is made based on the recommendation/request made by the head of the Roosevelt County department where the employee worked.

Hamilton Aff. ¶¶ 15-16, at 2-3.

[19]To support this assertion, Roosevelt County references its own asserted material fact, see MSJ ¶ 5, at 3, which the Court has discussed supra at 7 and deemed undisputed.

[20]Roosevelt County references the Hamilton Aff. to support this contention, see MSJ at 8, and the Court notes that, although Roosevelt County does not cite to any specific sworn statements, Hamilton Aff. ¶¶ 15-16, discussed supra n.18, sufficiently buttress the asserted contention. See Hamilton Aff. ¶¶ 15-16, at 2-3.

[21]Here, Roosevelt County references the material fact that "[a]s a Lieutenant, Mr. Parrish participated in discussion regarding firing employees and was involved in the discipline process at RCDC," MSJ ¶ 6, at 3, which the Court has noted and discussed supra 7-8.

Roosevelt County also asserts that it did not breach a contract with Parrish, because there was no contract.  See MSJ at 8 (citing Tapia v. City of Albuquerque, 10 F. Supp. 3d 1207, 1271 (D.N.M. 2014)(Browning, J)).  Roosevelt County postulates that, even if there was a contract, Roosevelt County did not breach it, because under the purported contract's terms, Parrish was not entitled to overtime pay.  See MSJ at 8.  Roosevelt County also asserts that it could not have breached the purported contract regarding Parrish's lunch break allegations, because Roosevelt County did not prevent Parrish from taking his lunch.  See MSJ at 8.  Roosevelt County concludes that, because Parrish was exempt from overtime pay and free to take lunch breaks of his own volition, Roosevelt County is not liable for the allegation of breach of contract, and summary judgment is appropriate.  See MSJ at 9.

**2.      The MSJ Response.**

Parrish responded to the MSJ on May 11, 2016.  See MSJ Response at 1.  In his response, Parrish advances that he was "stripped of any and all supervisory powers between March, and June, 2015 when he was forced to resign."  See MSJ Response at 1.  Parrish then contends that between March and June, 2015, "[t]he Administrator was out on sick leave and the other Lieutenant had quit."  MSJ Response at 1.  Parrish avers that he "was required to work fifty hours per week and was not paid on holidays," whereas "[he] had previously worked 40 hours per week," presumably during his tenure as floor officer.  MSJ Response at 2.  He continues to object generally that he "was not an exempt employee" and that Roosevelt County "breached its contract with [Parrish] by not paying him for meal and break times as its own written policies required."  MSJ Response at 2.  Parrish then concedes that he was in charge of Roosevelt Detention programs, but he qualifies that concession by arguing that he "did not have any independent authority to hire anybody" or "discipline anyone for work rule infractions" at

Roosevelt Detention.  MSJ Response at 2.  Parrish then asserts that he performed floor officer duties, presumably during his stint as lieutenant, "[b]ecause of severe short staffing."  MSJ Response at 2.  Concerning his lunch-break breach-of-contract claim, Parrish avers that he "worked through lunch breaks and other breaks during his shift."  MSJ Response at 3.

 Parrish advances four primary arguments in opposition to Roosevelt County's MSJ.  See MSJ Response at 7-11.  First, Parrish contends that his "primary dut[ies]" were not the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers."  MSJ Response at 8 (quoting 29 C.F.R. § 541.200(a)(2)).   He argues that the factors considered when determining an employee's primary duty include

> the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

MSJ Response at 8 (citing 29 C.F.R. § 541.700(a)).  Parrish concludes that his primary duties changed when his duties were rescinded in March, 2015, and that therefore he does not qualify for the exception.  See MSJ at 9.

Second, Parrish argues that he was not exempt under the FLSA's executive exemption. See MSJ Response at 9.  He contends that an employer bears the burden of proving the executive exception.  See MSJ Response at 9 (citing Archuleta v. Wal-Mart Stores, Inc., 543 F.3d 1226, 1233 (10th Cir. 2008)).  Parrish asserts that an employee's primary duty is management if it is the "principal, main, major or most important duty that the employee performs."  MSJ Response at 10 (quoting 29 C.F.R. § 541.700(a)).  To determine whether an employee's primary duty is management, Parrish directs the court to look at four non-exclusive factors: "[T]he amount of

time spent performing non-managerial tasks, (2) the relative importance of non-managerial duties as compared to other duties, (3) the employee's relative freedom from direct supervision, and (4) the relationship between the employee's salary and the wages paid to other employees performing nonexempt work."  MSJ Response at 10 (quoting 29 C.F.R. § 541.700(a)).  Parrish contends that he cannot meet this standard, because he "spent the majority of his time as a floor officer."  MSJ Response at 10.[22]  Regarding the freedom-from-direct-supervision factor, Parrish avers that two consultants supervised him, see MSJ Response at 10, grounded upon Parrish's statement that, "basically, I had [the two consultants], both, actually telling me everything to do basically, and they weren't even full-time employees of the County," Parrish Depo. at 135:1-6.[23]

Turning to his breach-of-contract claim, Parrish asserts that, under Roosevelt Detention's written policies, he was entitled to a lunch break and two additional fifteen-minute breaks per shift.  See MSJ Response at 10 (citations omitted).  He contends that "[g]overnment employees can rely on the terms of employment contracts with their governmental employers, including implied-in-fact employment contracts based on provisions in personnel manuals and on other representations and conduct of the parties."  MSJ Response at 11 (quoting Garcia v. Middle Rio

---

[22]Parrish asserts this factual allegation for the first time in his MSJ Response's Argument section.  See MSJ Response at 10.  Although the Court generally considers facts proffered in Summary Judgment Motion's Response to be additional facts, consistent with the local rules, see D.N.M.L.R.-Civ. 56.1(b), the material Parrish cites does not support Parrish's allegation.  Parrish's cited statement that "I might as well have been a floor officer, the way they were treating me," Parrish Depo. at 134:16-19 indicates only how he felt like the consultants treated him, see Bernard v. Grp. Pub., Inc., 970 F. Supp. 2d at 1210 ("Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.") and not that he spent the majority of the time as a floor officer.  Additionally, as considered supra n.3, the record does not support that Parrish spent most of his time as a floor officer during this period, because, inter alia, he was in charge of the facility while Casanova was out.  The material cited does not support Parrish's allegation, and the Court therefore will not credit it.  See Fed. R. Civ. P. 56(c)(1)(A).

[23]Roosevelt County does not address this factual allegation in its MSJ Reply, except to say that it is irrelevant.  See MSJ Reply at 2 n.1.  The Court therefore deems this fact undisputed.  See Fed. R. Civ. P. 56(e)(2); supra n.9.

Grande Conservancy Dist., 1996-NMSC-029, ¶ 11, 918 P. 2d 7, 10-11)(citation omitted). Parrish then asserts that he received neither the lunch breaks nor the additional fifteen-minute breaks to which he was entitled.  See MSJ Response at 11.  Finally, Parrish argues that Roosevelt County does not address Parrish's "uncompensated on-call time" in the MSJ, and he stresses that, between "at least March and June, 2015, [Parrish] was on call twenty-four hours a day, seven days a week."  MSJ Response at 11.

### 3.     **The MSJ Reply.**

On May 31, 2016, Roosevelt County replied to the MSJ Response.  See MSJ Reply at 1. Roosevelt County contends, broadly, that the assertions in Parrish's responsive pleading are conclusory, so do not "rebut the fact that [Parrish's] claims are barred because he was an FLSA exempt employee."  MSJ Reply at 2-3 (alterations added)(citations omitted).  Roosevelt County also reiterates that Parrish qualifies for the FLSA's administrative and executive exemptions. See MSJ Reply at 2.  First, Roosevelt County reasserts that the wages, which Parrish received, exceeded $455.00 per week and adds that Parrish's salary did not vary based on the hours he worked.  See MSJ at 3.  Second, Roosevelt County argues that Parrish's responsibilities over inmate programing "is critical to the safe and secure operation of a detention facility," adding that the "safety and health is a functional area specifically recognized by the Department of Labor exemption rule as being directly related to management or general business operations." MSJ Reply at 4 (citing 29 C.F.R. § 201(b)).   Additionally, Roosevelt County asserts that Parrish's role is equally critical for quality control, personnel management, and handling of grievances.  See MSJ Reply at 4 (citing 29 C.F.R. § 201(b); C.F.R. § 541.202(b)).  Roosevelt County contends that employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.  See MSJ Reply at 4 (citing

29 C.F.R. § 541.202(c)).  Roosevelt County also argues that the FLSA administrative exemption does not require Parrish's duties to be exclusively administrative, citing 29 C.F.R. § 541.700(b), which requires only that exempt employees spend more than fifty percent of their time on exempt duties.  See MSJ Reply at 4.  Roosevelt County notes that the administrative duties' relative importance -- compared to other duties -- is a factor to be considered, as is the relationship between the employee's salary and the wages paid to other employees for the same nonexempt work performed.  See MSJ Reply at 4 (citing 29 C.F.R. § 541.700(b)).  Third, contends that Parrish's primary duty was special program director, a position in which Parrish exercised discretion and independent judgment.  See MSJ Reply at 5.

Roosevelt County also refutes Parrish's contention that his duties and responsibilities were stripped, because, according to Roosevelt County, Parrish did not present evidence that he stopped performing his typical duties or fulfilling his program director role.  See MSJ at 6. Finally, Roosevelt County asserts that Parrish's contention that he had no independent authority to hire or fire anyone is immaterial, because the operative question is whether Parrish's recommendations and suggestions regarding hiring and firing is given particular weight.  See MSJ at 7.  It concludes that Parrish's recommendations had the requisite gravitas for the executive exemption to apply.  See MSJ at 7.

### 4.    **The Motion to Strike.**

On May 11, 2016, Parrish filed the Motion to Strike the Hamilton Aff., which Roosevelt County submitted in support of its MSJ.  See Motion to Strike, filed May 11, 2016 (Doc. 36). Parrish argues that Hamilton's proffered opinions in her affidavit are not based on personal knowledge, so lack the requisite foundation.  See Motion to Strike at 1-5.  Parrish primarily objects to Hamilton's statement that "[t]he Lieutenant position held by Keith Parrish was an

exempt position for which he received a salary and he was not entitled to overtime pay" under the Fair Labor Standards Act, 29 U.S.C. §§ 201-19, Motion to Strike ¶ 3, at 2 (quoting Hamilton Aff. ¶ 12, at 2), because this statement "contradicts her prior deposition testimony and impermissibly offers opinions about Mr. Parrish's status at the County," Motion to Strike at 4-5. Parrish also contends that the statements in the Hamilton Aff. ¶¶ 9, 10, 11, 12, 13, 14 and 15, at 1-2, are made without Hamilton's personal knowledge, based on her deposition testimony that "she claimed not to know about activities taking place before she became County Manager." Motion to Strike at 4.[24]  Parrish also objects to Hamilton's statement that non-exempt employees are entitled to overtime pay under the FLSA, because it is a legal opinion which lacks foundation or personal knowledge.  See Motion to Strike at 4 (citing Hamilton Aff. ¶ 8, at 2).

### 5.      The Motion to Strike Response.

On May 31, 2016, Roosevelt County responded to the Motion to Strike.  See Defendant Roosevelt County Board of County Commissioners Response to Plaintiff's Motion to Strike Summary Judgment Affidavit of Amber Hamilton at 1, filed May 31, 2016 (Doc. 42)("Motion to Strike Response").   In rejoinder, Roosevelt County maintains, first, that the Hamilton's Aff. satisfies all formal requirements for a summary judgment affidavit, because it: (i) is based on personal knowledge; (ii) sets forth facts which are admissible as evidence, and (iii) is based on matters to which Hamilton is competent to testify.  See Motion to Strike Response at 1-2 (citing Giles v. Univ. of Toledo, 241 F.R.D. 466, 469 (N.D. Ohio 2007)(Zouhary, J.)(establishing the three formal requirements for a summary judgment affidavit).   Second, Roosevelt County contends that the Hamilton Aff. does not contradict Hamilton's deposition testimony.  See Motion to Strike Response at 1.

---

[24]Paragraphs 9-15 in the Hamilton Aff. generally attest to Parrish's pay, duties, and responsibilities as a lieutenant, and his pay before becoming a lieutenant.

Roosevelt County argues that Hamilton's statements are based on personal knowledge, because all are either statements about how Roosevelt County operates or are statements taken from Parrish's personnel file.  See Motion to Strike Response at 2.  According to Roosevelt County, Hamilton would have personal knowledge of both, because she is the County Manager.  See Motion to Strike Response at 2.  Roosevelt County also argues that Hamilton Aff. facts are admissible evidence, because the testimony is based on personal knowledge or admissible documents, and the statements are not otherwise hearsay.  See Motion to Strike Response at 2.

Roosevelt County concludes that the Hamilton Aff. does not contradict Hamilton's prior deposition testimony.  See Motion to Strike Response at 2-3.  It contends that Parrish's highlighted testimony from the Hamilton deposition dealt with issues before Hamilton became County Manager, so do not pertain to anything from the Hamilton Aff., because the Hamilton Aff. discusses Roosevelt County's current operations or facts from Parrish's personnel file.  See Motion to Strike Response at 4.

6.      **The Motion to Strike Reply**.

On June 7, 2016, Parrish replied to the Motion to Strike Response.  See Plaintiff K[ei]th Parrish's Reply to "Defendant Roosevelt County Board of County Commissioners Response to Plaintiff's Motion to Strike Summary Judgment Affidavit of Amber Hamilton" at 1, filed June 7, 2016 (Doc. 44)("Motion to Strike Reply").  Parrish reiterates that the Hamilton Aff. is not based on personal knowledge and materially conflicts with Hamilton's deposition testimony.  See Motion to Strike Reply at 2.  Parrish contends that the Hamilton Aff. does not demonstrate that Hamilton is acquainted with Roosevelt County's operations and Parrish's employee file.  See Motion to Strike Reply at 2-3.  He also maintains that the Hamilton Aff. conflicts with Hamilton's deposition testimony, because, in her deposition, she testified that she could not

confirm or deny for what Parrish was initially hired, but, in her affidavit, she declares that Parrish held an exempt lieutenant position for which he received a salary and was not eligible for overtime pay.  See Motion to Strike Reply at 4.  Parrish concludes that the Hamilton Aff. also contains legal opinions that the Court must therefore strike.  See Motion to Strike Reply at 5 (citing Hamilton Aff. ¶ 8, 12, at 2).

### 7.   The Hearing.

The Court held a hearing on July 6, 2016.  See Draft Transcript of Motion Hearing (taken July 6, 2016)("Tr.").[25]  Roosevelt County demurred on rearguing the briefing, see Tr. at 5:5-7 (Auh), and the Court inquired whether, for the "period of time [when] the facility got very shorthanded," if Mr. Parrish "function[ed] in many ways as a nonexempt employee," or whether "his work[] day to day during that period of time looked a lot like the line guards there at the facility,"  Tr. at 5:8-14 (Court).  Roosevelt County noted that "there may have [been a] period of a couple of months when that may be said to be true," but nevertheless asserted that, "the job descriptions" included in their MSJ contemplate "that as a lieutenant there are going to be times when he is going to have to permit duties of, well, the entire facility basically."  Tr. at 5:15-22 (Auh).[26]  Roosevelt County then argued that, although Parrish may have done some non-lieutenant tasks for a period, Roosevelt Detention is a small, understaffed facility, and that, as a lieutenant, "he has to do whatever it takes to get [the job] done."  Tr. at 6:16-7:3 (Auh).

---

[25]The Court's citations to the hearing transcript refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

[26]In this colloquy, Roosevelt County references Position Specifications, dated March 18, 2013, filed April 27, 2016 (Doc. 35-4)("Position Spec.") and RC Job Descrip., which appears to be an updated version of the Position Spec.  Both documents generally describe a lieutenant's duties, such as "[o]rganize[] and supervise[] custodial work," Position Spec. at 1, and "[a]ssist in planning, implementation, and direction in the use of management information systems within the facility to identify the needs of the facility, inmates, and employees," RC Job Descrip. at 1.

The Court then inquired into the circumstances of Parrish's resignation, and Roosevelt County acknowledged that Parrish clashed with consultants who were brought in to the facility. See Tr. at 7:22-8:20 (Auh, Court).  Roosevelt County also acknowledged that Parrish worked more often once the consultants were retained.  See Tr. at 9:7-10 (Auh); id. at 9:22-10:6 (Auh). Turning to whether Parrish qualified for the FSLA's exemptions, Roosevelt County contended that Parrish's deposition demonstrates that, once Parrish became lieutenant, "a lot of people reported to him," Tr. at 11:21-22 (Auh), and that Parrish "was responsible for maintaining schedules and payroll," Tr. at 11:24-25 (Auh).  Roosevelt County also avers that, although Parrish testifies in his deposition that the consultants were telling Parrish what to do, that statement does not mean Parrish was no longer a supervisor; a supervisor's supervisor can tell supervisors what to do.  See Tr. at 12:14-21 (Auh).

Parrish responded first by arguing that Roosevelt Detention was a dangerous facility, and that Parrish was "basically stuck there with nobody to supervise and a whole bunch of angry inmates that were escaping."  Tr. at 15:10-12 (Dixon).  Parrish contends that, although his position title was lieutenant, that did not mean he was an exempt employee.  See Tr. at 16:16-19 (Dixon).  He also asserts that, even before the consultants arrived, he never was a manager or a supervisor.  See Tr. at 17:14 (Dixon); id. at 17:18-19 (Dixon).  Parrish concedes, however that he worked with inmates on the rehabilitation program and that the program was important.  See Tr. at 18:4-10 (Dixon); id. at 18:14 (Dixon).  Nevertheless, Parrish maintains that he does not qualify for the FSLA's exemptions, because his inmate program duties were not his primary duties.  See Tr. at 18:17-18 (Dixon).  Parrish asserts that summary judgment is inappropriate, because a jury may decide whether his duties were administrative or executive or what his primary duty was. See Tr. at 20:7-10 (Dixon); id. at 20:18-23 (Dixon).  He concludes that he's entitled to overtime

pay for the entirety of his lieutenant employment period.  See Tr. at 24:3 (Dixon).

Roosevelt County countered that Parrish was second-in-command at Roosevelt County for many years and many times he ran the facility when the first-in-command, Casanova, was sick.  See Tr. at 25:14-26:11 (Auh).  Roosevelt County reasserted that summary judgment was appropriate here, because the facts were undisputed, so the Court can make a determination as a matter of law.  See Tr. at 27:25-28:11 (Auh).  The Court concluded by noting that it was inclined to grant summary judgment on the FSLA claim in Roosevelt County's favor and to remand the breach-of-contract claim to state court.  See Tr. at 30:5-10 (Court).

## LAW REGARDING SUMMARY JUDGMENT

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'"  Herrera v. Santa Fe Pub. Sch., 956 F. Supp. 2d 1191, 1221 (D.N.M. 2013) (Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d at 891).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "If the *moving* party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial."  Celotex Corp. v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[27]

---

[27]Although the Honorable William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law.  See 10A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993) ("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."). Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1). It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his pleadings." Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.")(citation omitted). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, 2008 U.S. Dist. LEXIS 45838, at *1 (D. Kan. 2008)(Robinson, J.)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in the nonmoving party's favor, and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Fourth, the court cannot decide credibility issues. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

There are, however, limited circumstances in which the court may disregard a party's version of the facts. This doctrine developed most robustly in the qualified immunity arena. In

Scott v. Harris, 550 U.S. 372 (2007), the Supreme Court of the United States of America concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378-81. The Supreme Court explained:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. Fed. Rule Civ. Proc. 56(c). As we have emphasized, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. [at] 586-587 . . . (footnote omitted). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. [at] 247-248 . . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. at 380 (emphases in original). Applying these standards to a factual dispute over whether the plaintiff-respondent "was driving in such fashion as to endanger human life," the Supreme Court held that the plaintiff-respondent's "version of events is so utterly discredited by the record that no reasonable jury could have believed him." 550 U.S. at 380. Thus, the Supreme Court concluded, "[t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by [a] videotape," which showed the plaintiff-respondent driving extremely dangerously. 550 U.S. at 381.

The United States Court of Appeals for the Tenth Circuit applied this doctrine in Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), and explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so

> that no reasonable jury could believe it, a court should not adopt that version of the facts."   York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott, 550 U.S. at 380); see also Estate of Larsen ex rel. Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cty., 584 F.3d at 1312 (brackets omitted).   "The Tenth Circuit, in Rhoads v. Miller, [352 F. App'x 289 (10th Cir. 2009)(Tymkovich, J.)(unpublished),][28] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"   Lymon v. Aramark Corp., 728 F. Supp. 2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted), aff'd, 499 F. App'x 771 (2012).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."   Scott v. Harris, 550 U.S. 372, 377 (2007).   "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.   In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.   550 U.S. at 379.   Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.   There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.   And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility . . . .   Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation.   If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

---

[28]Rhoads v. Miller is an unpublished Tenth Circuit opinion, but the Court can rely on an unpublished Tenth Circuit opinion to the extent its reasoned analysis is persuasive in the case before it.   See 10th Cir. R. 32.1(A), 28 U.S.C. ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").   The Tenth Circuit has stated: "In this circuit, unpublished orders are not binding precedent, . . . and . . . citation to unpublished opinions is not favored. . . .   However, if an unpublished opinion . . . has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision."   United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005).   The Court concludes that Rhoads v. Miller, Gagnon v. Resource Tech., Inc., Hamby v. Assoc. Centers for Therapy, and Murray v. Edwards Cty. Sheriff's Dep't, have persuasive value with respect to a material issue, and will assist the Court in its preparation of this Memorandum Opinion and Order.

- 27 -

Rhoads v. Miller, 352 F. App'x at 291-92.  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92).   In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court," before inquiring into whether there are genuine issues of material fact for resolution by the jury.  584 F.3d at 1326-27 (Holmes, J., concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts").

## RELEVANT LAW REGARDING THE FLSA

The FLSA requires covered employers to pay a minimum wage, and to pay their nonexempt employees overtime pay of time and one half their regular rate of pay for hours worked in excess of forty in a work week.  See 29 U.S.C. §§ 207.  "The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'"  Barrentine v. Arkansas–Best Freight Sys., Inc., 450 U.S. 728, 739 (1981)(alterations in original)(quoting 29 U.S.C. § 202(a)).  See Bustillos v. Bd. of Cty. Comm'rs of Hidalgo Cty., 310 F.R.D. 631, 642 (D.N.M. 2015)(Browning, J.).  It is the employer's burden at trial to prove that plaintiffs fall "'plainly and unmistakably' within a FLSA exemption."  Maestas v. Day & Zimmerman, LLC, 664 F.3d at 829 (quoting Rodriguez v.

Whiting Farms, Inc., 360 F.3d 1180, 1184 (10th Cir. 2004)).  "[E]xemptions under the FLSA 'are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit.'" Rodriguez v. Whiting Farms, Inc., 360 F.3d at 1184 (quoting Arnold v. Ben Kanowsky, Inc., 361 U.S. 388, 392 (1960)).  See Reich v. New York, 3 F.3d 581, 586-87 (2d Cir. 1993)(stating that, consistent with FLSA's remedial purpose, "we do not give FLSA exemptions generous application").

### 1.   Executive Exemption

Under 29 C.F.R. § 541.100(a), the FLSA's executive exemption triggers when an employee:

(1)   [Is] [c]ompensated on a salary basis at a rate of not less than $455 per week . . . ;[29]

(2)   Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;

(3)   Who customarily and regularly directs the work of two or more other employees; and

(4)   Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a).  Accord Maestas v. Day & Zimmerman, LLC, 664 F.3d 822, 827 (10th

---

[29]The Department of Labor published a final rule effective December 1, 2016 raising the $455.00 per week requirement to $913.00 per week.  See 29 C.F.R. § 541.600; 81 FR 32391-01, 2016 WL 2943519.  The Honorable Judge Amos L. Mazzant, United States District Judge for the Eastern District of Texas, issued a preliminary injunction on November 22, 2016 enjoining the Department of Labor from "implementing and enforcing" the new regulation, Nevada v. Dep't of Labor, 218 F. Supp. 3d 520, 534 (E.D. Tex. 2016), and  ruled on August 31, 2017 that the rule exceeded the Department of Labor's authority,  see Nevada v. Dep't of Labor, __ F. Supp. __, 2017 WL 3837230, at *8 (E.D. Tex. 2017)(Mazzant, J.).  The Court cites to the rule that was effective at the time of the Plaintiffs' employment.

Cir. 2012).  "In FLSA cases, a court must first determine the employee's primary duty, and then determine whether that primary duty disqualifies the employee from FLSA's protections." Maestas v. Day & Zimmerman, LLC, 664 F.3d at 827.  "[P]rimary duty means the principal, main, major or most important duty that the employee performs."   29 C.F.R. § 541.700(a) (quotations omitted).   "In evaluating an employee's primary duty, a court must base its determination on all the facts in the case, 'with the major emphasis on the character of the employee's job as a whole.'"   Gonzales v. City of Albuquerque, 849 F. Supp. 2d 1123, 1186 (D.N.M. 2011)(Browning, J.), aff'd, 701 F.3d 1267, (quoting 29 C.F.R. § 541.700(a)).

> Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

29 C.F.R. § 541.700(a).  "[E]mployees who spend more than 50 percent of their time performing exempt work will generally satisfy the primary duty requirement."   29 C.F.R. § 541.700(b). Time, by itself, however, is not the only test, and employees who spend more than fifty percent of the time on non-exempt work are not automatically disqualified from the executive exemption.   See Maestas v. Day & Zimmerman, LLC, 664 F.3d at 827; Gonzales v. City of Albuquerque, 849 F. Supp. 3d at 1188.  "Because the primary duty inquiry presents a question of fact, summary judgment is proper only if there [is] no genuine dispute regarding plaintiffs' primary duties."  Maestas v. Day & Zimmerman, LLC, 664 F.3d at 827.

Management duties include, but are not limited to, "activities such as interviewing, selecting and training of employees; setting and adjusting their rates of pay and hours of work; directing the work of employees . . . ; disciplining employees; planning the work . . . ; [and] providing for the safety and security of the employees or the property."  29 C.F.R. § 541.102.

The Court previously determined that a supervisor performed management duties when she, among other things, "attended management training that discussed [her] supervisory responsibilities," "monitored her employees' calls and counseled them on how to best handle" their work responsibilities, and "completed progressive disciplinary forms in situations involving employee infractions." Gonzales v. City of Albuquerque, 849 F. Supp. 2d at 1187.

To "customarily and regularly" direct others' work means to supervise others with a frequency that is greater than occasional, but less than constant. 29 C.F.R. § 541.701. See Gonzalez v. City of Albuquerque, 849 F. Supp. 2d at 1189 (ruling that supervising ten to fifteen employees during the day shift qualified as customarily and regularly directing others work). An employee who supervises two or more employees only in the actual manager's absence does not meet the requirement. See 29 C.F.R. § 541.104(c). To determine whether an employee's suggestions and recommendations are given particular weight, factors to be considered include:

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs. It does not include an occasional suggestion with regard to the change in status of a co-worker. An employee's suggestions and recommendations may still be deemed to have particular weight even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.

29 C.F.R. § 541.105 (quotations omitted). The Court has determined that, on a motion for summary judgment, participating in interviewing potential employees alone is insufficient to meet the executive exemption's final factor, i.e., whether the employee's suggestions regarding hiring, firing, or advancement are given particular weight. See Gonzales v. City of Albuquerque, 849 F. Supp. 2d at 1189.

2.     **Administrative Exemption.**

Pursuant to 29 C.F.R. § 541.200(a), the FLSA's administrative exemption triggers when an employee:

(1)     [Is] [c]ompensated on a salary basis at a rate of not less than $455 per week . . . ;[30]

(2)     Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and

(3)     Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

29 C.F.R. § 541.200(a).  To qualify for the administrative exemption, "an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer."  29 C.F.R. § 541.201(a).

Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities.

29 C.F.R. § 541.201(b).  What qualifies as "discretion and independent judgment must be applied in the light of all the facts involved" and factors include:

whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree,

---

[30]The Department of Labor also published a final rule effective December 1, 2016, raising this regulation's $455.00 per week requirement to $913.00 per week.  See 29 C.F.R. § 541.600; 81 FR 32391-01, 2016 WL 2943519.  See also n.28.  Judge Mazzant, also issued a preliminary injunction for this rule on November 22, 2016, enjoining the Department of Labor from "implementing and enforcing" the new regulation.  Nevada v. Dep't of Labor, 218 F. Supp. 3d at 534.  The Court cites the rule that was effective at the date of Parrish's employment.

even if the employee's assignments are related to operation of a particular
segment of the business; whether the employee has authority to commit the
employer in matters that have significant financial impact; whether the employee
has authority to waive or deviate from established policies and procedures without
prior approval; whether the employee has authority to negotiate and bind the
company on significant matters; whether the employee provides consultation or
expert advice to management; whether the employee is involved in planning long-
or short-term business objectives; whether the employee investigates and resolves
matters of significance on behalf of management; and whether the employee
represents the company in handling complaints, arbitrating disputes or resolving
grievances.

29 C.F.R. § 541.202(b).  The exercise of independent judgment "implies that the employee has

authority to make an independent choice, free from immediate direction or supervision."  29

C.F.R. § 541.202(c).  "However, employees can exercise discretion and independent judgment

even if their decisions or recommendations are reviewed at a higher level."  29 C.F.R.

§ 541.202(c).  Active participation in high level meetings concerning how a company is run

satisfies the discretion and independent judgment test.  Gagnon v. Resource Tech., Inc., 19

F. App'x 745, 748-49 (10th Cir. 2001)(unpublished).  See Hamby v. Assoc. Centers for Therapy,

230  F. App'x 772, 784  (10th  Cir. 2007)(unpublished)("Hamby exercised discretion and

independent judgment," because "she was required to counsel and advise her client families

making, as the district court accurately described, game-time decisions in order to provide

support to her client families").

## ANALYSIS

        The Court concludes that the Hamilton Aff.'s substance is sufficiently based on the

county manager's personal knowledge, either from experience or through access to Parrish's

employee file, and that there is no irreconcilable conflict between the Hamilton Aff. and

Hamilton's previous deposition testimony.  The Court therefore denies Parrish's Motion to

Strike.  The Court also concludes that Roosevelt County is entitled to summary judgment on

Parrish's FSLA claim, because Parrish qualifies for FSLA's administrative and executive exemptions.   He exceeds the exemptions' salary requirements, he directed the inmate program, supervised other officers, directed the facility while Casanova was away, weighed in on hiring and firing, and, as director and supervisor, Parrish exercised discretion.   Because the Court dismisses Parrish's FSLA claim, the Court no longer has federal-question jurisdiction, and it declines to exercise its supplemental jurisdiction, under 28 U.S.C. § 1367(c), over Parrish's state-law breach-of-contract claim.   Accordingly, the Court grants the MSJ as to the FLSA claim, but dismisses the breach-of-contract claim without prejudice.

I.     **THE COURT WILL NOT GRANT PARRISH'S MOTION TO STRIKE, BECAUSE THE HAMILTON AFF. IS BASED ON PERSONAL KNOWLEDGE.**

Parrish argues that the Court should strike the Hamilton Aff., because it is not based on Hamilton's personal knowledge, and because it contradicts her deposition testimony.   Under rule 56(c)(4) of the Federal Rules of Civil Procedure, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).   An affidavit is thus "inadmissible if 'the witness could not have actually perceived or observed that which he testifies to.'"   Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1200 (10th Cir. 2006)(quoting United States v. Sinclair, 109 F.3d 1527, 1536 (10th Cir. 1997)).   This standard arises from the federal rules of evidence, which require a testifying witness to have personal knowledge of the matter.   See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1200.   In evaluating an affidavit under this standard, a court may consider "the witness's own testimony" to determine whether there is "sufficient" evidence to support a finding of personal knowledge.   Hansen v. PT Bank Negara Indon. (Persero), 706 F.3d 1244, 1250 (10th Cir. 2013).

Here, the Court concludes that there is sufficient evidence that the Hamilton Aff. is based on personal knowledge. Hamilton's statements concern either the ways in which Roosevelt Detention generally operates or are statements of fact derived from information in Parrish's personnel file. See Hamilton Aff. ¶¶ 1-16, at 1-3. Hamilton, as the Roosevelt County manager, is intimately acquainted with Roosevelt County's operations and employee classifications, as well as with Parrish's personnel file, and is thus competent to testify on such matters. Finally, the Court may consider the Hamilton Aff. to the extent that it relays hearsay information from the personnel file, because the personnel file is a business record. See Fed. R. Evid. 803(6). See also, e.g., In re Air Crash Disaster at Stapleton Int'l Airport, 720 F. Supp. 1493, 1499 (D. Colo. 1989)(Finesilver, M.J.)(admitting into evidence personnel files on an American Airlines employee under the business record exception); Martinez v. Albertsons Store #907, No. 98-0168, 1999 WL 1481909, at *6 (D.N.M. October 6, 1999)(Black, J.).

The Court likewise concludes that the Hamilton Aff. does not impermissibly contradict Hamilton's prior deposition testimony. Even where an affidavit and deposition are "not entirely consistent," a court should "only strike the affidavit if it [is] in 'clear, irreconcilable conflict' with the deposition such that the affidavit was simply 'an attempt to create a sham fact issue.'" Servants of the Paraclete v. Great Am. Ins. Co., 866 F. Supp. 1560, 1565 (D.N.M. 1994)(Burciaga, J.)(quoting Durtsche v. America Colloid Co., 958 F.2d 1007, 1010 n.2 (10th Cir. 1992); Franks v. Nimmo, 796 F.2d 1230, 1237 (10th Cir. 1986)). Moreover, "an affidavit should be excluded only when its irrelevance is clear." Lewis v. N.M. Dep't of Health, 275 F. Supp. 2d 1319, 1328 (D.N.M. 2003)(Vazquez, J.)(quoting 10B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2738, 322 (3d ed. 1998)). Having reviewed the record, the Court concludes that there is no "irreconcilable conflict," Servants of the Paraclete v. Great

Am. Ins. Co., 866 F. Supp. at 1565 (citations omitted), between the Hamilton Aff. and Hamilton's previous deposition testimony.   Indeed, the allegedly conflicting deposition statements that Parrish proffers appear to be unrelated to those in the Hamilton Aff.   In the testimony cited, Hamilton states that she cannot confirm or deny whether Parrish was originally hired to direct special programs, because she was not present when Parrish was interviewed.   See Motion to Strike at 2 (citing Hamilton Depo. at 35:17-24).   The Hamilton Aff. does not say why Parrish was originally hired.   See Hamilton Aff. ¶¶ 1-16, at 1-3.   Rather, Hamilton attests to such things as Parrish's promotion date, his concordant pay increase, whether he was entitled to overtime pay, and how the Detention Administrator hired and fired employees.   See Hamilton Aff. ¶¶ 11-16, at 2-3.   The Hamilton Aff. is also relevant, because it pertains to the classification of Parrish's position -- the lawsuit's central issue.   Thus, the Court concludes that the Hamilton Aff. can be considered on summary judgment.

## II.   THE COURT DISMISSES PARRISH'S FLSA CLAIM, BECAUSE HIS VARIOUS DUTIES DEMONSTRATE THAT HE QUALIFIES FOR THE FLSA'S ADMINISTRATIVE AND EXECUTIVE EXEMPTIONS.

Parrish qualifies for both the administrative and executive exemptions, because his primary duties include supervising others and running the inmate program at Roosevelt Detention.   To qualify for the administrative exemption, Parrish must be compensated at least $455.00 per week on a salaried basis,[31] his primary duty must be "the performance of office or

---

[31]As noted above, the Department of Labor published a final rule effective December 1, 2016 raising the $455.00 per week requirement to $913.00 per week.   See 29 C.F.R. § 541.600; 81 FR 32391-01, 2016 WL 2943519.   Judge Mazzant issued a preliminary injunction on November 22, 2016 enjoining the Department of Labor from "implementing and enforcing" the new regulation, Nevada v. Dep't of Labor, 218 F. Supp. 3d at 534 (E.D. Tex. 2016), and ruled on August 31, 2017 that the rule exceeded the Department of Labor's authority, see Nevada v. Dep't of Labor, __ F. Supp. __, 2017 WL 3837230, at *8.   The Court applies the $455.00 standard, because that was the effective rule during the time period in question.   See Young Chul Kim v. Capital Dental Technology Laboratory, Inc., __ F. Supp. 3d __, 2017 WL 4357386, at *7 n.10.

non-manual work directly related to the management or general business operations" of Roosevelt Detention, and, his primary duty must include the exercise of discretion or independent judgment.  29 C.F.R. § 541.200(a).  Parrish meets the salary requirement, because his weekly salary equaled $677.65 per week.  See MSJ ¶ 1, at 3 (citing Offer Letter at 1 (offering Parrish a "modified salary of $35,238.00/year")); supra at 3-4 (concluding that the fact is undisputed).

Parrish also satisfies the next two factors.  Both factors require the Court to determine Parrish's primary duty.  "In evaluating an employee's primary duty, a court must base its determination on all the facts in the case, 'with the major emphasis on the character of the employee's job as a whole.'"  Gonzales v. City of Albuquerque, 849 F. Supp. 2d at 1186 (quoting 29 C.F.R. § 541.700(a)).  As a whole, Parrish's job entailed directing the inmate program, see MSJ ¶ 2, at 3 (citing Parrish Dep. at 82:21-83:20; id. at 87:3-10; id. at 100:15-24); supra at 4-6 (concluding that fact is undisputed), and supervising others, see MSJ ¶ 3, at 3 (citing Parrish Dep. at 98:22-99:2; id. at 99:12-16); MSJ ¶ 4, at 3 (citing Parrish Depo. at 109:23-110:4; Hierarchy Chart); supra at 6-7 (concluding that those facts are undisputed).[32]  Directing the inmate program involved "[a]dminister[ing] the daily supervision, custody, care and the treatment programs and processes of the detention center," and entailed "provid[ing]

_____

[32]In its MSJ, Roosevelt County attached a document describing a Roosevelt Detention lieutenant's job responsibilities, which reinforces the conclusion that Parrish's job entailed supervising others and directing operations at Roosevelt Detention.  See RC Job Descrip. at 1. For example, a lieutenant's "essential functions" include: "Maintain responsibility for preparation and / or oversight of all shift paperwork, including personnel payroll reporting. . . .  Maintain responsibility for first-line recommendations of budget line items and expenses as anticipated during the fiscal year. . . .  [P]lanning, assigning, directing, and scheduling of work, and performance management."  RC Job Descrip. at 1.  See Parrish Depo. at 112:12-17 ("Q: The fifth bullet down says: Maintain responsibility for preparation and/or oversight of all shift paperwork, including personnel payroll report.  Did you do that as a lieutenant?  A: Yes.").

administrative oversight to all facility support service areas." Parrish Depo. at 100:5-11.  Parrish

also participated in hiring, firing, and disciplinary decisions.  See MSJ ¶ 5, at 3 (citing Parrish

Depo. at 113:18-114:10); MSJ ¶ 6, at 3 (citing Parrish Depo. at 114:10-115:8); supra at 7-8

(concluding that those facts are undisputed).  For a period beginning in March, 2015, and ending

in June, 2015, Parrish was on-call for twenty-four hours a day and for seven days a week.  See

MSJ Response ¶ 3(C), at 4 (citing Parrish Depo. at 145:16-25; id. at 146:9-25; id. at 148:1-19; id.

at 150:7-25; id. at 151:11-14; id. at 153:17-25; id. at 160:5-161:1); supra at 8 (concluding that

this fact is undisputed).  Although Parrish does not explain what his responsibilities were while

he was on call, the record that Parrish cites suggests that his on-call responsibilities involved

advising subordinates and ensuring Roosevelt Detention's continued operation.  See Parrish

Depo. at 150:6-12 ("Q: . . .  Were you constantly on call?  A: Yes, sir, . . . the reason being that

Administrator Casanova was out and Lieutenant Gibbs had quit.").  Parrish's representations also

suggest that he performed floor officer duties as well, see MSJ Response ¶ 3(A), at 4; Tr. at

17:19-21 (Dixon), but the record demonstrates that Parrish performed many of his supervisory

tasks in addition to his floor officer duties, even during the period in which Parrish argues that all

of his lieutenant responsibilities were stripped, see supra n.3.

From those facts, the Court concludes that Parrish's primary duty is directly related to

Roosevelt Detention's management.  See 29 C.F.R. § 541.201(a) ("To meet this requirement, an

employee must perform work directly relating to assisting with the running or servicing of the

business."). The Court concludes that directing the inmate program and supervising others are

Parrish's primary duties, even though he may have performed floor-duty tasks.  Running the

inmate program and otherwise heading the entire prison facility while Casanova was away is

more important than the floor duties Parrish performed -- as is suggesting when others should be

hired, fired, and disciplined.  See 29 C.F.R. § 541.700(a) ("Factors to consider when determining the primary duty of an employee include . . . the relative importance of the exempt duties as compared with other types of duties . . . and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.").  Parrish's lieutenant salary, moreover, was relatively higher than a floor officer's wage.  Compare Offer Letter at 1 (listing Parrish's lieutenant salary at $35,238.00 per year), with Authority/Request to Proceed/Hire at 1, dated February 14, 2012, filed April 27, 2016 (Doc. 35-1)("Officer Letter")(listing Parrish's floor officer wage at $10.65 per hour, equaling, assuming a forty-hour work week, a $22,152.00 yearly wage).  Finally, supervising others and suggesting disciplinary action falls within "personnel management," which 29 C.F.R. § 541.201 notes is "[w]ork directly related to management or general business."  29 C.F.R. § 541.201(b).

Parrish's primary duty also includes the exercise of discretion or independent judgment.  The exercise of independent judgment "implies that the employee has authority to make an independent choice, free from immediate direction or supervision."  29 C.F.R. § 541.202(c).  Heading Roosevelt Detention while Casanova was away shows that Parrish often made independent determinations free from immediate supervision, because, as the commanding officer, he would have had to make daily judgment calls regarding how to direct floor officers.  See Maestas v. Day & Zimmerman, LLC, 664 F.3d at 831 (ruling that summary judgment was appropriate for "the highest-ranking field officer," because he led "daily briefings" and "supervis[ed] the entire shift").  Fielding calls from subordinates also demonstrates that Parrish exercised independent judgment, because he would have been responding to their questions remotely and in the moment, so no one could have been immediately directing him.   Although Parrish posits that, at least from March, 2015, until June, 2015, the two consultants

"continuously" supervised him, MSJ Response at 10, an employee can still exercise discretion and independent judgment even if he has a supervisors, see 29 C.F.R. § 541.202(c) ("However, employees can exercise discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level.").[33]   The Court concludes accordingly, that Parrish qualifies for the administrative exemption.

Parrish also qualifies for the FLSA's executive exemption.  To qualify for the executive exemption, Parrish must have had a salary greater than or equal to $455.00 per week, his primary duty must be Roosevelt Detention's management, he must "customarily and regularly direct[] the work of two or more other employees," and his recommendations for hiring, firing, advancement, or promotion must have "particular weight."  29 C.F.R. § 541.100(a).  As already discussed, supra at 37, Parrish has a salary greater than $455.00 per week.  The Court has also already determined that Parrish's primary duties are directing the inmate program and supervising others, and the Court concludes that those also qualify as management under the FSLA's regulations.  See 29 C.F.R. § 541.102 ("Generally, management, includes . . . activities such as . . . directing the work of employees . . . [and] apportioning the work among the employees.").  Parrish's duties also include, participating in employee disciplinary actions and interviews, see MSJ ¶ 5, at 3 (citing Parrish Depo. at 113:18-114:10); MSJ ¶ 6, at 3 (citing

---

[33]The record belies that the consultants constantly supervised Parrish.  The consultants could not have been around when Parrish remotely fielded calls from subordinates or at every moment that he acted as the head officer while Casanova was not present.  Parrish also casts doubt on his point that the consultants constantly supervised him, because, sometimes, Roosevelt Detention had only two persons working per shift.  See MSJ Response ¶ 3(D), at 5 (citing Hamilton Depo. at 18:4-10; id. at 26:15-25); supra at 8-9 (concluding that this fact is undisputed).  Although conceivable that the two persons working could have been Parrish and a consultant, it is unlikely that would have always been the case.  Even assuming that the consultants constantly supervised him, that fact is not determinative, because supervised employees may still exercise independent judgment as a matter of law.  See 29 C.F.R. § 541.202(c).

Parrish Depo. at 114:10-115:8); supra at 7-8 (concluding that those facts are undisputed), which also qualify as "management," 29 C.F.R. § 541.102 ("Generally, management, includes . . . activities such as interviewing . . . [and] disciplining employees."). Turning to the third factor, Parrish supervises more than two employees on a regular basis. See MSJ ¶ 4, at 3 (citing Parrish Depo. at 109:23-110:4; Hierarchy Chart); supra at 7 (concluding that this fact is undisputed).[34] Finally, Parrish participated in employee hiring and firing. See MSJ ¶ 5, at 3 (citing Parrish Depo. at 113:18-114:10); MSJ ¶ 6, at 3 (citing Parrish Depo. at 114:10-115:8); supra at 7-8 (concluding that those facts are undisputed).

To qualify for the exemption, however, Parrish's suggestions on hiring and firing must have been particularly weighty. Factors to consider on an employee's suggestion's gravitas include:

> whether it is part of the employee's job duties to make such suggestions and recommendations; the frequency with which such suggestions and recommendations are made or requested; and the frequency with which the employee's suggestions and recommendations are relied upon. Generally, an executive's suggestions and recommendations must pertain to employees whom the executive customarily and regularly directs.

29 C.F.R. § 541.105. Here, Parrish was present at all floor officer interviews after he became a lieutenant. See Parrish Depo. at 113:18-23. Parrish's job description lists weighing in on interviewing and hiring as part of his job responsibilities. See RC Job Descrip. at 1; Parrish Depo. at 113:15-17. Parrish was one of three people who usually participated in the interviews. See Parrish Depo. at 114:3-7. On these facts, the Court concludes that Parrish's involvement with hiring was sufficiently weighty to qualify for the executive exemption. As only one of three people to participate in every interview, his recommendations would carry weight. Although

---

[34]Parrish states in his deposition testimony that he regularly supervised at least five other officers. See Parrish Depo. at 109:23-110:9.

Parrish insists that he never hired anyone, see MSJ Resp. at 10, the relevant test is whether Parrish's hiring recommendations carried weight, see 29 C.F.R. § 541.105 ("An employee's suggestions and recommendations may still be deemed to have particular weight even if a higher level manager's recommendation has more importance and even if the employee does not have authority to make the ultimate decision as to the employee's change in status.").

Because the Court concludes that both the administrative and executive exemptions apply to Parrish's FLSA claims, it dismisses those claims.  The Court declines to exercise supplemental jurisdiction over Parrish's remaining state-law breach-of-contract claim.  See 28 U.S.C. § 1367(c)(3); Merrifield v. Bd. of Cty. Comm'rs, 654 F.3d 1073, 1086 (10th Cir. 2011)(concluding that, in the interest of comity, the district court should have remanded a state law claim after it dismissed the claims over which it had original jurisdiction). Accordingly, that claim will be dismissed without prejudice.

**IT IS SO ORDERED** that: (i) Defendant the Roosevelt County Board of County Commissioners Motion for Summary Judgment, filed April 27, 2016 (Doc. 35), is granted; and (ii) Plaintiff Keith Parrish's Motion to Strike Summary Judgment Affidavit of Amber Hamilton, filed May 11, 2016 (Doc. 36), is denied.  The Court dismisses Parrish's Violation of the Fair Labor Standards Act claim (Count I) with prejudice and dismisses Parrish's Breach of Contract claim (Count II) without prejudice.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Eric D. Dixon
Portales, New Mexico

     *Attorney for the Plaintiff*

Grace Philips
New Mexico Association of Counties
Santa Fe, New Mexico

--and--

Peter S. Auh
New Mexico Association of Counties
Albuquerque, New Mexico

--and--

Andrew Lambert Johnson
Keleher & McLeod, P.A.
Albuquerque, New Mexico

     *Attorneys for the Defendant*